IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-02348-RM-BNB

MILTON BRADLEY GAREWAL,

Plaintiff,

v.

U.S. MARSHAL JOROME SLIZ,
U.S. MARSHAL GILLIAN FLECK,
DR. CRUM,
NURSE JOHNSON, and
THE NATIONAL COMMISSION ON CORRECTIONAL HEALTH CARE,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Motion to Dismiss Defendants Jerome Sliz and Gillian Fleck** [Doc. #75, filed 09/30/2013] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

**I.  STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537

F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Third Amended Complaint on July 29, 2013 [Doc. #61] (the "Complaint"). The Complaint contains the following allegations:

1. In April 2012, defendant Fleck transported the plaintiff to and from "the Federal Building" unshackled "due to plaintiff's medical card stating plaintiff has a drop foot." *Complaint*, p. 6.[1]

2. On May 11, 2012, the plaintiff was transferred to and from "the Denver City Jail" and "the Federal Building" by defendants Sliz and Fleck. The plaintiff "asked . . . Fleck . . . if she remembered not placing shackles on plaintiff's feet in April during transportation because plaintiff showed medical card stating plaintiff had a drop foot and was wearing a brace on foot." Fleck stated that she did remember but that Sliz was in charge and "if he said you have to wear shackles then you have to wear the shackles." Id.

3. The plaintiff showed his medical card to Sliz. The medical card states that the plaintiff has a drop foot and wears a brace on his foot for that reason. The plaintiff explained to Sliz what a drop foot is and what would happen if the plaintiff was forced to wear shackles. He

---

[1] I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

told Sliz that it wasn't a good idea to place shackles on [his] feet." Sliz told the plaintiff "we'll just go slow. You can take your time. There's no hurry. We're early anyway." The plaintiff explained that going slow or fast was not relevant; "if I can't throw my foot far enough to land flat my foot will drag and cause me to trip." He again told Sliz that it was not a good idea to make him wear shackles.  Id. at pp. 6-7.

    4.  Sliz placed the shackles on the plaintiff. Approximately 15 to 20 steps into the transport, the plaintiff tripped and began to fall. As he was falling, the shackles twisted on his right foot and broke three bones in that foot.  Id. at p. 7.

    5.  Sliz caught the plaintiff as he fell. Sliz removed the shackles after the plaintiff stated that his foot might be broken because it did not feel right and it hurt really bad.  Id.

    6.  Fleck asked the plaintiff if he could walk. The plaintiff stated that he could if he had to, but he did not think that he should. Sliz told the plaintiff "Your [sic] tough. Take your time. We'll go slow. Take as much time as you need."  Id. at p. 8.

    7.  The plaintiff walked into "the hearing room" and "back during transportation to the Denver City Jail."  Id.

    8.  Upon return to the jail, the plaintiff asked Fleck if they were going to tell the jail officials that he broke his foot so he could get medical attention for the fractures and the pain. Fleck told the plaintiff that he would have to submit a medical kite and tell the jail officials himself.  Id.

The plaintiff asserts that the defendants violated 18 U.S.C. § 241, the Eighth Amendment, and the Fourteenth Amendment's Due Process Clause.[2]  Id. at p. 4.  He seeks examination and evaluation by an "outside" doctor; a change in the jail's policy regarding responses to inmates' medical needs; costs; attorney fees; and nominal, compensatory, and punitive damages.  Id. at p. 18.

### III.  ANALYSIS

#### A.  18 U.S.C. § 241

As a preliminary matter, the plaintiff may not bring a claim under 18 U.S.C. § 241. Section 241 criminalizes conspiracies to violate a person's rights under the Constitution or the laws of the United States.  Section 241 does not form a basis for civil liability.  Kelly v. Rockefeller, 69 Fed.Appx. 414, 415-16, 2003 WL 21386338 (10th Cir. June 17, 2003).

#### B.  Eighth Amendment and Due Process Claims

The defendants assert that they are entitled to qualified immunity on the individual capacity claims.  *Motion*, pp. 15-17.  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would

---

[2] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[3]

The plaintiff does not state whether he is a pretrial detainee[4] or a convicted prisoner. Regardless, the Tenth Circuit Court of Appeals has stated that although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, "this Court applies

---

[3]The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

[4]A pretrial detainee is a person who has been charged with a crime but who has not yet been tried on the charge. Bell v. Wolfish, 441 U.S. 520, 523 (1979).

an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."[5]

Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).

      A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth

---

[5]The plaintiff's constitutional claims against Sliz and Fleck are brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Although the Supreme Court has declined to extend Bivens beyond a remedy for violations of the Fourth Amendment, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the equal protection component of the Fifth Amendment's Due Process Clause, Correctional Services Corp. v. Malesko, 534 U.S. 61, 66-68 (2001), the Tenth Circuit has repeatedly recognized due process claims brought pursuant to Bivens.  E.g. Jordan v. Federal Bureau of Prisons, 191 Fed.Appx. 639 (10th Cir. July 25, 2006) (affirming the district court's judgment against a federal prisoner who brought a Bivens action asserting that the conditions and duration of his nearly five year administrative detention in ADX violated his due process rights).  See also Palma-Salazar v. Davis, 677 F.3d 1031 (10th Cir. May 1, 2012) (holding that a federal prisoner's challenge to conditions of confinement at ADX under Fifth and Eighth Amendment must be brought pursuant to Bivens, not 28 U.S.C. § 2241); Rodriguez v. General Counsel for Federal Bureau of Prisons, 315 Fed.Appx. 79, 80 (10th Cir. February 27, 2009) (analyzing federal prisoner's Bivens claim that his due process rights were violated in connection with a prison disciplinary hearing); Ajaj v. United States, 293 Fed.Appx. 575, 584-86 (10th Cir. September 15, 2008) (analyzing federal prisoner's Bivens claim that prison officials violated his procedural due process rights by transferring him to ADX without notice or hearing and continued to confine him there for indefinite duration without ability to meaningfully challenge his placement); Hill v. Pugh, 75 Fed.Appx. 715 (10th Cir. September 11, 2003) (analyzing federal prisoner's Bivens claim challenging placement at ADX as violation of due process rights); Treadwell v. Holt, 42 Fed.Appx. 86, 88 (10th Cir. March 8, 2002) (analyzing federal prisoner's due process claim brought under Bivens which challenged classification and placement within federal penal system); Brightbill v. United States, 3 Fed.Appx. 793, 796-97 (10th Cir. January 30, 2001) (affirming the district court's finding that the plaintiffs had not alleged sufficient facts to show a violation of their substantive due process rights under Bivens)
      However, the circuit court has never addressed the issue directly.  Because I find that the plaintiff has failed to allege a violation of his constitutional rights, I decline to determine whether Bivens would provide a remedy for him under the Due Process Clause.

Amendment violation. Id. at 298.  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The plaintiff alleges that he showed the defendants a medical card which states that he has a drop foot and wears a brace; he explained to Sliz "what a drop foot was and what could and would happen if the plaintiff was forced to wear shackles"; he told them "it wasn't a good idea" to make him wear shackles; and Fleck had previously permitted the plaintiff to be transported without leg shackles because of his drop foot.

The plaintiff does not allege that Fleck previously permitted the plaintiff to be transported without shackles because of her belief that there was a substantial risk of serious harm or injury to the plaintiff.  Nor does he allege that his drop foot required that he wear a brace during the May 11th transport, or that his medical card prohibited shackling.  To the contrary the plaintiff attaches to the Complaint a copy of a medical card dated July 5, 2012--two months after the incident --which lists as restrictions "needs bottom bunk, may have brace for foot drop, needs cane for balance."  The card does not impose a restriction on leg shackling, and the plaintiff does not allege that the card he carried on May 11, 2012, imposed a restriction on shackling.

Moreover, the plaintiff alleges that he told Sliz that "it wasn't a good idea" to make him wear shackles; he does not allege he told Sliz that his medical condition prohibited shackling. Although the plaintiff alleges that he explained drop foot and what would happen if he wore shackles, he also alleges that Sliz attempted to accommodate him by telling him that they could walk slowly. Even though application of the shackles may have been imprudent, the plaintiff has not alleged sufficient facts to show that either of the defendants were deliberately indifferent to his drop foot.

The plaintiff further alleges that the defendants made him walk on a broken foot and would not notify the jail of his injury. There are no allegations that the defendants were aware that the plaintiff's foot was actually broken or that he could not walk on it. Indeed, the plaintiff alleges that Fleck asked him if he could walk, and he said "if I have to I guess I can." Moreover, there are no allegations that either defendant was aware that the plaintiff would not be seen by medical personnel for three days upon his return to the jail. The plaintiff has failed to allege sufficient facts to state a plausible claim that the defendants were deliberately indifferent to his injury.[6]

## IV. CONCLUSION

I respectfully RECOMMEND that the Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Doc. #75] be GRANTED.[7]

---

[6]Because I find that the plaintiff has failed to allege a violation of his Eighth Amendment or Due Process rights, I do not need to determine if the plaintiff's constitutional rights were clearly established for qualified immunity purposes.

[7]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the

Dated December 9, 2013.

                                          BY THE COURT:

                                          s/ Boyd N. Boland
                                          United States Magistrate Judge

---

recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).